WILLIAM S. LEETE vs. THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

Third Judicial District, Bridgeport, April Term, 1913.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

General Statutes, § 3734, originally enacted in 1881, provides that every railroad company operating any railroad thereafter "constructed," shall erect and maintain sufficient fences along the line of its layout, except at such places as the railroad commissioners may adjudge them unnecessary. In 1890 the defendant, desiring to double track its line and eliminate a curve near to or adjoining a pasture then owned by the plaintiff's father, bought of him a strip of land along the northerly side of its then right of way, upon which newly-acquired strip the double tracks were laid and the line straightened as contemplated. *Held* that this alteration and improvement, as related to the adjoining land, was to be regarded as a "construction" then made, within the meaning and intent of the statute, and therefore cast upon the defendant the duty of erecting and maintaining the division fence at that point.

The "construction" contemplated by the statute is not one which looks to original construction alone, or to reconstruction of a line in its entirety or even substantial entirety, but one which takes cognizance of alterations which bring into existence a substantially new line of road at the point in question in place of the former one, regardless of what may or may not be done elsewhere.

Argued April 8th—decided May 7th, 1913.

ACTION to recover damages for the loss of four steers which were alleged to have been killed upon the defendant's tracks through its failure to maintain a sufficient fence between its property and the pasture of

the plaintiff, brought to the Court of Common Pleas in New Haven County where the plaintiff was nonsuited in a trial to the jury before *Simpson, J.*, from which judgment the plaintiff appealed. *Error and new trial ordered.*

The jury would have been justified in finding the following facts upon the evidence:—

About 1850 the New Haven and New London Railroad Company, chartered in 1848, and authorized to lay out a road not exceeding six rods in width between New Haven and New London, made its location between these two cities, and acquired the strip of land covered thereby, and constructed a single track road thereon. The right of way thus acquired and built upon crossed land of the plaintiff's father and predecessor in title. The plaintiff's pasture, involved in this case, adjoins it on the northerly side. When this work was done, the company erected a fence on the boundary line. The situation thus created remained unchanged until 1890, and the division fence continued to be maintained by the corporation owning or operating the railroad.

In 1864 the Shore Line Railroad Company acquired the franchise and property which had belonged to the New Haven and New London Railroad Company. In 1872 the defendant became the lessee in perpetuity of the property, and thereafter, as lessee, operated the line between New Haven and New London until 1897, when the lessor company became merged in the defendant lessee corporation, which has since owned and operated the line.

In 1890 the defendant, desiring to double-track its line and eliminate a curve near to or adjoining the pasture now owned and occupied by the plaintiff, but then owned and occupied by his father, purchased from the father a strip of land extending along the northerly

side of its then right of way, and of such width that the boundary line between the land of the company and that of the grantor was carried to the north such a distance as to be eighty feet from the middle line of the old right of way. The deed was silent as to the erection or maintenance of a fence along the new boundary. The contemplated improvements were thereupon made, the line of tracks straightened, and double tracks laid. Opposite the land now the plaintiff's, the tracks were so laid that all of the northerly tracks and a considerable part, if not the whole, of the southerly, were located upon the newly purchased strip, and there they have remained. The existing boundary fence was torn down in the process of the change, and a new one erected by the company along the new boundary line. This fence has been maintained by the defendant ever since. In July, 1911, it had become out of repair and insufficient.

At that time the plaintiff was feeding certain steers in his pasture immediately adjoining the defendant's property as stated, when, by reason of the insufficiency of the boundary fence, they escaped through it and upon the defendant's tracks, where they were killed by the defendant's train.

*Ward Church*, for the appellant (plaintiff).

*Henry J. Hart*, for the appellee (defendant) submitted his side of the case on briefs.

PRENTICE, C. J. The plaintiff made out a prima facie case, if, upon facts which the jury reasonably might have found upon the evidence before it, it was the defendant's duty to maintain a sufficient fence between its right of way and the plaintiff's adjoining pasture. General Statutes, § 3736. That duty might

arise from a statute imposing it, or authorizing its imposition by a public board, or from a contractual assumption of it. Whether or not it might not, as the plaintiff conceives, come into existence otherwise, we have no occasion to inquire.

We have had statutes regulating this subject running back as far as 1850. Public Acts of 1850, p. 67, Chap. 62. These statutes, down to 1881, disclose varying provisions and a somewhat changing policy. They were superseded by an Act adopted in 1881, which, in substance, has remained the law to the present time. Public Acts of 1881, p. 35, Chap. 66. We need not, for the present at least, concern ourselves with the earlier statutes, but may confine our examination to the provisions of the Act of 1881, appearing substantially unchanged in § 3734 of the General Statutes.

This Act, which has remained in force without interruption, casts upon the corporation operating a railroad the duty of erecting and maintaining sufficient fences along its sides, except as the railroad commissioners by their order shall otherwise prescribe, where its construction was either subsequent to the passage of the Act or under an Act of incorporation passed since the first Wednesday of May, 1850. In all other cases no such duty exists, save as the commissioners may have imposed it by their order. The evidence discloses no order by the commissioners affecting the fence in question. It discloses no physical changes in the line which can be claimed to amount to construction, except those involved in its original construction about 1850 and those attending or coincident with its double-tracking in 1890. The first of these changes were under an Act of incorporation passed prior to 1850. It follows, therefore, that, if the defendant has come under the duty of maintaining the fence through which the plaintiff's cattle are said to have escaped, it must have

been for the reason that what was done in 1890 is to be regarded as "construction" within the meaning and intent of the Act.

The defendant contends that the statute, in its reference to construction, in the phrases "hereafter constructed" and "constructed under any act of incorporation passed," etc., contemplates construction in its relation to the entire line as an indivisible entity, and that it does not contemplate, as construction, changes which may be made in portions of the line which do not create an entirely new line. Such an interpretation would apparently confine the application of the word to original construction and exclude all changes, however radical, and involving whatsoever departure from the original route and affecting whatsoever property-owners it might, provided only the termini of the line, however far removed from each other, remained unchanged. It would, at least, confine its application to changes of such extreme character that the road must be regarded as an essentially different one from that previously existing.

Abstractly considered, the language of the Act might, indeed, bear this interpretation, but it is easy to discover how the rule so interpreted might lead in its concrete applications to unintended and unjust results, especially in the case of railroads originally constructed under an Act of incorporation passed prior to 1850. Take, for instance, the present situation, changed only in this, that the original location did not touch the land owned by the plaintiff's predecessor in title. If the later alteration, which brought the railroad upon the plaintiff's land, is not to be regarded as construction, he would be deprived of the benefit which the statute evidently intended to accord to him as a property-owner whose property is made to abut upon a railroad.

The interpretation contended for by the defendant is therefore one which ought to yield to one more in consonance with justice and the manifest general purpose of the statute, if its language reasonably bears such interpretation, as we think it easily and naturally does. We are of the opinion that the construction contemplated by the statute is not one which looks to original construction alone, or to reconstruction of a line in its entirety, or even substantial entirety, but one which takes cognizance of alterations which bring into existence a substantially new line of road at the point in question in place of the former one, and quite regardless of what may or may not be done elsewhere.

Applying this principle to the situation before us as the jury might have found it, it appears that the defendant's purpose, in addition to the double-tracking, was to so change the existing line as to reduce or eliminate a curve, and that the accomplishment of this purpose involved a practical relocation of the company's right of way, the acquisition of the additional strip purchased from the plaintiff's father, the practical, if not complete, desertion of the original location, and the placing of the tracks wholly or for the most part on the land so acquired.

We are of the opinion that here was an alteration of the defendant's location and road which entitled it, as related to the plaintiff's adjoining land, to be regarded as a construction then made within the meaning and intent of the statute. If follows that the duty of erecting and maintaining the division fence in question was one which devolved upon the defendant. It appears to have recognized the existence of that duty at the time the work was done by the erection of such fence, and we are of the opinion that it made no mistake in so thinking and acting.

Other claims made on behalf of the plaintiff do not call for consideration.

There is error and a new trial is ordered.

In this opinion the other judges concurred.